## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| JANICE F. HERRING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-2010-TLP-atc |
| | ) | |
| SHELBY COUNTY GOVERNMENT | ) | |
| HEALTH SERVICE, LORRIE BROOKS, | ) | |
| GREG MATHEWS, and VICKIE LEWIS, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Before the Court by Order of Reference[1] is Defendants Shelby County Government
Health Service ("Shelby County"), Lorrie Brooks, Greg Mathews, and Vickie Lewis's Motion
for Summary Judgment, filed April 7, 2025.  (ECF No. 55.)  *Pro se* Plaintiff Janice F. Herring
filed a Response on May 1, 2025.  (ECF No. 56.)  Defendants filed a Reply on May 15, 2025.
(ECF No. 57.)  For the reasons set forth below, it is recommended that Defendants' Motion for
Summary Judgement be granted in part and denied in part.

## PROCEDURAL HISTORY

On January 4, 2024, Herring filed a Complaint against Defendants alleging disability
discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112–
12117 (the "ADA"), by terminating her employment, failing to accommodate her disability,
subjecting her to unequal terms and conditions of her employment, creating a hostile work

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States
Magistrate Judge for management and for all pretrial matters for determination and/or report and
recommendation as appropriate.

environment, and retaliating against her.  (ECF No. 1.)  She also brings claims for "harassment,"

"humiliation," and "defamation of character."  (*Id.*)  On February 7, 2025, the Court entered a

Report and Recommendation recommending that (1) Herring be allowed to proceed against

Shelby County on her ADA claims and against all Defendants on her defamation claim and (2)

her ADA claims against Brooks, Mathews, and Lewis be dismissed.  (ECF No. 48, at 9.)  The

Report and Recommendation was adopted in full by United States District Judge Thomas L.

Parker on March 18, 2025.  (ECF No. 54.)

## PROPOSED FINDINGS OF FACT

As a threshold matter, the Court must determine which facts are undisputed for purposes

of ruling on Defendants' Motion.  Along with their Motion, Defendants filed a Statement of

twenty-six undisputed material facts ("Defendants' Facts").  (ECF No. 55-1.)  Defendants' Facts

are supported by the Declaration of Greg Mathews, Herring's manager at Shelby County's

Commodities Supplemental Food Program ("CSFP") (ECF No. 55-3); the Declaration of Lorrie

Brooks, Deputy Director of the Shelby County Health Department (ECF No. 55-4); the

Declaration of Stephanie Maxwell, a security officer posted at the CSFP office (ECF No. 55-5);

excerpts from Herring's deposition transcript (ECF No. 55-6); and the Declaration of Vickie

Lewis, Herring's supervisor (ECF No. 55-7).

Herring responded to Defendants' Facts by conceding ten of them and disputing sixteen.

(ECF No. 56.)[2]  As to the disputed facts, she relies on the exhibits attached to her Complaint (*id.*

at 4–13, 19–22); various medical records (ECF No. 56-1, at 1–18; ECF No. 56-2, at 1–13); a

Shelby County policy (ECF No. 56-3, at 14–15); an email containing a screenshot of a chat

---

[2] Herring does not dispute Defendants' Facts Nos. 1, 2, 3, 8, 9, 12, 16, 17, 23, and 24.  She
disputes Defendants' Facts Nos. 4, 5, 6, 7, 10, 11, 13, 14, 15, 18, 19, 20, 21, 22, 25, and 26.

conversation (*id.* at 16); a disciplinary action form (ECF No. 56-4, at 1); a separation notice (*id.* at 2); a timesheet (*id.* at 3); and her own Declaration (*id.* at 5–11).[3]

Herring's response does not comply with Local Rule 56.1(b), which requires that "[e]ach disputed fact must be supported by specific citation to the record." Local Rule 56.1(d) further provides:

> Failure to respond to a moving party's statement of material facts . . . within the time periods provided by these rules shall indicate that the asserted facts are not disputed for purposes of summary judgment.

*See also* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion . . . ."). Defendants' Facts that Herring disputes but offers insufficient citations for are therefore deemed undisputed. *See Sanders v. Baptist Mem'l Hosp.*, No. 14-CV-2414-SHL-tmp, 2015 WL 5797607, at *1 (W.D. Tenn. Aug. 19, 2015), *report and recommendation adopted*, 2015 WL 5797618 (W.D. Tenn. Oct. 1, 2015), *aff'd*, 15-6136 (6th Cir. Apr. 11, 2016) (collecting cases in which courts in this district deemed as undisputed facts that plaintiffs failed to respond to consistent with Local Rule 56.1(b)).

For some of Defendants' Facts that Herring has designated as disputed, she offers no citations to the record, instead providing only unsworn narrative responses. (*See* ECF No. 56, at 14–17, 19–26; ECF No. 56-2, at 14–22; ECF No. 56-3, at 1–13.) That type of narrative response

---

[3] Herring also purports to provide a Statement of Additional Undisputed Material Facts, but, in doing so, she states only the following: "Utilizing * EEOC Documents *Original Complaint & *Department of Labor & Work Force as Material Facts on all undisputed responses." (ECF No. 56, at 3.) The intent of this statement is unclear. Regardless, as argued by Shelby County, Herring has failed to list (or even identify) any additional facts (*see* ECF No. 57, at 3–4 (quoting L.R. 56.1)), and thus any additional facts she seeks to assert by relying on these documents will be disregarded. The Court will, however, consider Herring's Declaration and the facts asserted therein. (ECF No. 56-4, at 5–12.)

is insufficient to bring a fact into dispute, and those facts are therefore deemed undisputed. *See*

*Elvis Presley Enter. v. City of Memphis, Tenn.*, No. 2:18-cv-2718-SHM-atc, 2020 WL 6163564,

at *3 (W.D. Tenn. Oct. 21, 2020) (explaining that, when responding to a properly supported

summary judgment motion, "[t]he non-moving party has the duty to point out specific evidence

sufficient to justify a jury decision in its favor") (citing Fed. R. Civ. P. 56(c)(1); *InterRoyal*

*Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)); *see also Jones v. Mayble*, 2:18-cv-

02875-TLP-tmp, 2021 WL 1951171, at *2 (W.D. Tenn. May 14, 2021) (quoting *Garrett v. Mich.*

*Dep't of Corr.*, No. 3:18-cv-12844, 2020 WL 5223800, at *5 (E.D. Mich. July 13, 2020))

("[W]hen opposing summary judgment, a party cannot rely on allegations or denials in unsworn

filings and . . . a party's status as a pro se litigant does not alter this duty on a summary judgment

motion.").  Any such unsworn narratives will be disregarded for purposes of the analysis herein.

Herring also includes some documents in her Response but largely fails to specify the

portions of those documents that bring any particular fact into dispute.  (*See* ECF No. 56, at 4–13

(appearing to be offered to dispute Fact Nos. 4–15 and 26); *id.* at 19–22 (appearing to be offered

to dispute Fact Nos. 16–28); ECF No. 56-1 (appearing to be offered to dispute Fact Nos. 19–22);

ECF No. 56-2, at 1–12 (same); ECF No. 56-3, at 6–16 (appearing to be offered to dispute Fact

No. 26); ECF No. 56-4, at 1–3 (same).)  To the extent the Court is able to decipher which parts

of these documents Herring intends to offer in dispute of particular facts, those documents will

be discussed further below.  To the extent the Court is unable to do so, those facts are deemed

undisputed due to the lack of sufficient citation to the record.  And to the extent Herring's

submissions constitute inadmissible hearsay, those submissions do not adequately bring

Defendants' Facts into dispute.  *See Ramirez v. Bolster & Jeffries Health Care Grp., LLC*, 277 F.

Supp. 3d 889, 897 (W.D. Ky. 2017) ("In ruling on a motion for summary judgment, the Court

must consider only evidence that would be admissible at trial." (citing *McFeely v. United States*, 700 F. Supp. 414, 418 n.1 (S.D. Ind. 1988)). Hearsay, an out-of-court statement offered for the truth of the matter asserted, Fed. R. Evid. 801, cannot be considered on a motion for summary judgment. *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994).

As a result, as set out below, some of Defendants' Facts that Herring contests are undisputed and others are adequately disputed purposes of summary judgment. Given the foregoing, the Court finds the following facts are material for purposes of the Motion:

Herring began working as a clerical specialist with the Shelby County Health Department on October 3, 2022. (ECF No. 55-1 ¶ 1; ECF No. 56 ¶ 1.) Herring has suffered from claustrophobia since she was a small child. (ECF No. 55-1 ¶ 17; ECF No. 56 ¶ 17.) On February 15, 2023, while at work, Herring began to feel sick. (ECF No. 55-1 ¶ 21; ECF No. 56-4 ¶ 9.) She remained at work because she began to feel better. (ECF No. 55-1 ¶ 21.)[4] On February 17, 2023, Herring began experiencing leg and stomach cramps, and she was permitted to leave work. (ECF No. 55-1 ¶ 22; ECF No. 56-4 ¶ 10.) She went to the emergency room the following day, where she learned she suffers from hypokalemia. (ECF No. 55-1 ¶ 23; ECF No. 56, at 3.) Herring's hypokalemia made her feel disoriented, confused, and awkward, but she continued to work every day while under a doctor's care. (ECF No. 55-1 ¶ 24; ECF No. 56, at 3.)

On March 17, 2023, Maxwell, a security officer, claims to have witnessed an interaction between Herring and Lewis, Herring's supervisor, and believed Herring was making negative

---

[4] Herring attempts to dispute this fact, relying on her medical records. (ECF No. 56-1, at 1–18; ECF No. 56-2, at 1–12.) None of those records, however, indicate whether or why she remained at work on February 15th. In addition, Defendants' Fact No. 21 is taken directly from Herring's own pleadings. (*See* ECF No. 1-7, at 1.) Therefore, this Fact is deemed undisputed.

and threatening remarks to Lewis.  (ECF No. 55-1 ¶¶ 6, 7.)[5]  According to Maxwell, Lewis had

asked Herring to move to a different room to complete an assignment, and Herring refused in a

loud and aggressive tone.  (*Id.* ¶ 6.)  Herring does not appear to dispute that some sort of

interaction occurred between her and Lewis on March 17th involving a request that Herring

move to a different room, but she denies Maxwell's characterization of the events and that the

interaction involved threatening remarks, arguing, or insubordination.  (ECF No. 56, at 11–13;

ECF No. 56-4 ¶ 13; ECF No. 55-6, at 4–5.)  Thus, the nature of the March 17th interaction

between Herring and Lewis is in dispute.

Maxwell reported the incident to Shelby County administration and provided a written

statement of her version of events.  (ECF No. 55-1 ¶ 8; ECF No. 56, at 2.)[6]  After reviewing

Maxwell's report, Brooks, the Deputy Director of the Health Department, began investigating

the incident.  (ECF No. 55-1 ¶ 9; ECF No. 56, at 2.)  Brooks spoke with Lewis, Maxwell, and

other staff members in the office as part of her investigation and asked them to provide written

statements.  (ECF No. 55-1 ¶ 10.)[7]  Brooks claims to have relied on these written statements in

determining the disciplinary action for Herring's alleged conduct.  (*Id.* ¶ 11.)[8]

---

[5] As discussed below, Herring disputes Maxwell's version of events.  However, as also discussed below, Herring does not dispute that Maxwell made a report and that it was subsequently investigated.

[6] Herring does not dispute that Maxwell made this report or that it was investigated, though she disputes Maxwell's characterization of the events, as discussed above.  (ECF No. 56, at 11–13; ECF No. 56-4 ¶ 13; ECF No. 55-6, at 4–5.)  Thus, the fact that an investigation took place is undisputed.

[7] Herring does not dispute that Brooks undertook an investigation after Maxwell's report, but she does dispute that Brooks asked Herring to provide a written statement or involved Herring in the investigation at all.  (ECF No. 56-4 ¶ 15.)

[8] Herring disputes this fact, claiming that Brooks had no reason to fire her, her decision was based on hearsay, and that she has never behaved inappropriately at work.  (ECF No. 56, at 16.)  Though Herring may dispute Brooks's purported reasons for the disciplinary action decision, it is

On March 22, 2023, Brooks and Mathews, Herring's manager, met with Herring to discuss the March 17th incident, during which Herring admitted that she refused to move to a different room but denied that she yelled at Lewis.  (ECF No. 55-1 ¶ 12; ECF No. 56, at 2.) Brooks concluded that Herring was in violation of Shelby County's employee policies No. 103, Employee Responsibility, and No. 702, Conduct, and terminated Herring on March 31, 2023. (ECF No. 55-1 ¶ 14.)[9]  Herring was never required to work in the room she objected to.  (ECF No. 55-1 ¶ 15.)[10]

With respect to her medical conditions, Herring never told Defendants about her claustrophobia until March 22, 2023, at the earliest.  (ECF No. 55-1 ¶ 18; ECF No. 55-6, at 3; ECF No. 56-5 ¶ 15.)[11]  And with respect to hypokalemia, Herring did not know that she suffered from it until February 18, 2025.  (ECF No. 55-1 ¶ 19; ECF No. 55-6, at 1; ECF No. 56-5 ¶¶ 10,

---

undisputed that Brooks claims to have relied upon the written statements provided by staff members concerning the March 17th interaction between Herring and Lewis when deciding to fire Herring.

[9] Herring does not appear to dispute this portion of Defendants' Fact No. 14.  (ECF No. 56, at 17.)

[10] Herring does not appear to dispute this portion of Defendants' Fact No. 15.  (ECF No. 56, at 17.)

[11] Defendants claim that Herring never told them about her claustrophobia.  Though it is true that Herring responded "no" at her deposition when asked whether she "ever report[ed] the claustrophobia to your employer," the remainder of her response indicates that she meant that she did not disclose her claustrophobia during the application process and her initial employment with Shelby County.  (ECF No. 55-6, at 3.)  In her Declaration, Herring states that she told Brooks about her claustrophobia on March 22, 2023.  (ECF No. 56-4 ¶ 15.)  Thus, for purposes of summary judgment, it is undisputed that Herring did not tell Defendants about her claustrophobia before March 22nd.

11.)[12] Neither Lewis, Mathews, nor Brooks made false or defaming statements about Herring. (ECF No. 55-1 ¶ 26.)[13]

## PROPOSED CONCLUSIONS OF LAW

### I.    Legal Standard for Summary Judgment

Courts evaluate motions for summary judgment under Federal Rule of Civil Procedure 56(a). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Harper v. City of Cleveland*, 781 F. App'x 389, 392 (6th Cir. 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). Thus, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Wilmington Tr. Co. v. AEP Generating Co.*, 859 F.3d 365, 370 (6th Cir. 2017) ("Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to

---

[12] Herring attempts to dispute this fact by arguing that she told Defendants about feeling poorly due to low potassium as early as January 2023 (ECF No. 56 ¶ 18), but this contention does not address the fact that Herring was first diagnosed with (and first learned about) her hypokalemia on February 18, 2025. (ECF No. 56-4 ¶¶ 10, 11.) Thus, Defendants' Fact No. 19 is undisputed.

[13] Herring attempts to dispute this fact, claiming in her unsworn response that Lewis ridiculed how she dressed in front of others, said she "wouldn't be employed there long," and told another employee that she was a bus driver. (ECF No. 56-2 at 3, 14–15.) She also claims that Brooks submitted false information regarding her employment during the appeal of her unemployment benefits claim and that the information defamed her character to the point where no one would hire her. (*Id.* at 22.) In terms of evidentiary support for these statements, Herring submits an email that appears to contain a screenshot of a conversation with Mathews (ECF No. 56-3, at 16), but the conversation includes statements made only by Herring, not by Mathews. She also submits a disciplinary action form (ECF No. 56-4, at 1), a separation notice (*id.* at 2), and a timesheet (*id.* at 3), but those documents also identify no allegedly defamatory statements. In any event, even if the Court were to consider Herring's unsworn and/or unsupported arguments on this point, she has failed to show that these statements are anything more than interpersonal disputes that do not rise to the level of defamatory comments. Herring has failed to offer any admissible evidence sufficient to bring Defendants' Fact No. 26 into dispute, and it is therefore deemed undisputed.

judgment as a matter of law.") (quoting *Thomas M. Cooley Law Sch. v. Kurzon Strauss, LLP*,
759 F.3d 522, 526 (6th Cir. 2014)).  "A material fact is one 'that might affect the outcome of the
suit,' and a genuine dispute exists 'if the evidence is such that a reasonable jury could return a
verdict for the nonmoving party.'"  *Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021) (quoting
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "The moving party bears the burden
of showing that no genuine issues of material fact exist."  *McClellan v. Midwest Machining, Inc.*,
900 F.3d 297, 302 (6th Cir. 2018) (citing *Celotex*, 477 U.S. at 324).  "A party asserting that a fact
cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of
materials in the record, including depositions, documents, electronically stored information,
affidavits or declarations, stipulations (including those made for purposes of the motion only),
admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1)(A).  "A party
may object that the material cited to support or dispute a fact cannot be presented in a form that
would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).

In evaluating summary judgment motions, a court must "draw all reasonable inferences
in favor of the nonmoving party."  *Harper*, 781 F. App'x at 392 (citing *Matsushita Elec. Indus.
Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).  Nevertheless, "[t]he nonmoving party
must do more than simply 'show that there is some metaphysical doubt as to the material facts.'"
*Stevens-Bratton v. TruGreen, Inc.*, 437 F. Supp. 3d 648, 652 (W.D. Tenn. 2020) (quoting *Lossia
v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018)).  A properly supported motion for
summary judgment will not be defeated by conclusory allegations, speculation, or
unsubstantiated assertions.  *Bradley*, 587 F. App'x at 866 (citing *Lujan*, 497 U.S. at 888).  In
determining whether a dispute of material fact exists, "[t]he court need consider only the cited
materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  At the

same time, "[a] district court is not required to search the entire record to establish that it is bereft of a genuine issue of material fact," as "judges are not like pigs, hunting for truffles that might be buried in the record." *Emerson v. Novartis Pharms. Corp.*, 446 F. App'x 733, 736 (6th Cir. 2011) (citations, quotations, and alterations omitted).

"Although summary judgment must be used carefully, it 'is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut.'" *Stevens-Bratton*, 437 F. Supp. 3d at 652 (quoting *FDIC v. Jeff Miller Stables*, 573 F.3d 289, 294 (6th Cir. 2009)). Ultimately, "[w]hen the non-moving party fails to make a sufficient showing of an essential element of his case on which he bears the burden of proof, the moving parties are entitled to judgment as a matter of law and summary judgment is proper." *Peterson v. Medtronic, Inc.*, No. 2:17-cv-02457-MSN-atc, 2020 WL 6999225, at *4 (W.D. Tenn. Sept. 30, 2020) (quoting *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 914 (6th Cir. 2013)). "These standards apply regardless of a party's *pro se* status; the liberal pleading standard for *pro se* parties is inapplicable once a case has progressed to the summary judgment stage." *Almasri v. Valero Ref. Co. – Tenn., LLC*, No. 2:20-cv-02863-SHL-tmp, 2022 WL 895732, at *3 (W.D. Tenn. Feb. 18, 2022), *report and recommendation adopted*, 2022 WL 891842 (W.D. Tenn. Mar. 25, 2022) (citations and internal quotations omitted).

## II.    ADA Claims

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees." 42 U.S.C. § 12112(a). "ADA discrimination claims are analyzed under two different rubrics, depending on whether the plaintiff relies on 'direct' or 'indirect' evidence of discrimination." *Scaff v. Gap, Inc.*, 673 F.

Supp. 3d 887, 901 (M.D. Tenn. 2023).  When no direct evidence of discrimination is identified,[14]

courts evaluate whether indirect evidence supports the discrimination claim using the *McDonnell*

*Douglas* burden-shifting framework.  "[O]nce a plaintiff makes out a prima facie case, the

burden shifts to the defendant to articulate a non-discriminatory explanation for the employment

action, and if the defendant does so, the burden shifts back to the plaintiff to prove that the

defendant's explanation is pretextual."  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 802–04 (1973); *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008)).

    A.    <u>Discriminatory Discharge</u>

    Herring alleges that she was terminated because of her disabilities in violation of the

ADA.  Specifically, she contends that Shelby County fired her when she refused to move to a

smaller room and because of other issues that stem from her claustrophobia and hypokalemia.

To make out a *prima facie* case of discriminatory discharge, a plaintiff must show that she "(1)

had a disability, (2) was 'qualified to perform' the job's 'requirements with or without

reasonable accommodation'; and (3) 'would not have been discharged but for the disability.'"

*Maxson v. Baldwin*, No. 23-3702, 2024 WL 1282458, at *3 (6th Cir. Mar. 26, 2024) (quoting

*Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020)).  Shelby County challenges only the

first and third requirements.

---

[14] "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions."  *Johnson v. Kroger Co.*, 319 F.3d 858, 864–65 (6th Cir. 2003) (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999)).  "A facially discriminatory employment policy or an express statement by a decision-maker of a desire to terminate employees because they belong to a protected class would constitute direct evidence of discrimination." *Satterfield v. Karnes*, 736 F. Supp. 2d 1138, 1157 (S.D. Ohio 2010) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).  Herring has presented no such evidence in this case.

1.    *Disability*

Under the ADA, an individual is disabled if she has "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Shelby County argues that Herring is not disabled under any of the prongs. (ECF No. 52, at 8.) "[B]oth the definition of 'disability' and the term 'substantially limit' are to be construed in favor of broad coverage." *Williams v. AT & T Mobility Servs., LLC*, 186 F. Supp. 3d 816, 824 (W.D. Tenn. 2016) (citing § 12102(4)(A)). "Congress intended that using a new lower standard would 'make the disability determination an appropriate threshold issue but not an onerous burden for those seeking accommodations or modifications.'" *Id.* (citing 29 C.F.R. § 1630.2(j)(1)(iii)). The Sixth Circuit has summarized the applicable standard as follows:

> Section 12102(1)(A) and its supporting regulations broadly define the term "disability" for purposes of the ADA. Consider the three major aspects of that definition: "physical or mental impairment," "substantially limits," and "major life activities."
>
> "*Physical or mental impairment*" is defined in federal regulations to include "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems." 29 C.F.R. § 1630.2(h)(1). The "degree of functional limitation required for an impairment to constitute a disability" does not "create a demanding standard." 29 C.F.R. pt. 1630, App. § 1630.2(j)(1)(iv). The "disability determination [thus is] an appropriate threshold issue but not an onerous burden for those seeking to prove discrimination under the ADA." *Id.*
>
> "*Substantially limits*" is a relative term, one defined in relation to a person's ability to perform a major life activity "as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). An impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id.*
>
> "*Major life activities*" include a non-exhaustive list of activities, including, among other things, caring for oneself, performing manual tasks, and interacting with others. 29 C.F.R. § 1630.2(i)(1)(i), (2). Amendments to the ADA in 2008 sweep even more broadly, adding to that list any "operation of a major bodily function,

including . . . normal cell growth."  42 U.S.C. § 12102(2)(B); 29 C.F.R.
§ 1630.2(i)(1)(ii).

And for cases on the margin, the Act includes a "rule of construction" that tips in
favor of coverage.  It instructs that the definition of disability "shall be construed
in favor of broad coverage of individuals . . . to the maximum extent permitted by
the terms" of the ADA.  42 U.S.C. § 12102(4)(A).

*Darby v. Childvine, Inc.*, 964 F.3d 440, 445 (6th Cir. 2020).

Herring is an individual with disabilities under the ADA.  It is undisputed that Herring

was diagnosed with hypokalemia on February 18, 2023, a condition reflecting lower-than-normal

levels of potassium in the blood.  *See Brady v. Soc. Sec. Admin.*, No. 3:14-cv-1977, 2017 WL

2376864, at *2 n.5 (M.D. Tenn. May 31, 2017) (citing Mayo Clinic, Low Potassium

(hypokalemia), www.mayoclinic.org/symptoms/low-potassium/basics/definition/sym-20050632

(last visited May 11, 2017)).  Hypokalemia is a physiological disorder affecting a body system

and thus constitutes a physical impairment.  It is also undisputed that Herring's hypokalemia

made her confused, disoriented, and awkward.  Though Shelby County argues that Herring has

provided no admissible evidence that her condition substantially limits one of her major life

activities, it acknowledges that Herring experienced these symptoms, as well as vomiting and

stomach and leg cramps that made walking painful.  (ECF No. 55-2, at 8.)  Given that Herring's

burden of demonstrating a disability is "not onerous" or "demanding" and that the term is to be

broadly construed in favor of coverage, she has successfully demonstrated that she is disabled

under the ADA.

In addition, it is undisputed that Herring suffers from claustrophobia.  Shelby County

does not address whether that condition renders Herring disabled under the ADA, so the Court

will assume that it does for purposes of the analysis herein.

2.    *Causation*

Shelby County argues that Herring has failed to show that her disability was the "but for" cause of her termination. Though Shelby County relies on cases addressing causation in the context of a retaliation claim (ECF No. 55-2, at 10), its contention is nonetheless true in the discrimination context as well: "A plaintiff under the ADA needs to show that disability was the 'but for' causation of the employer's adverse action." *Bent-Crumbley v. Brennan*, 799 F. App'x 342, 345 (6th Cir. 2020) (citing *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314–17 (6th Cir. 2012)).

Herring declares in her summary judgment submissions (ECF No. 56-4) and testified during her deposition (ECF No. 55-6) that she informed Defendants of her hypokalemia and claustrophobia in February and March 2023, respectively, and that she was fired because of the limitations her disabilities cause and for opposing Maxwell's report about and Brook's investigation into the March 17th interaction with Lewis that involved discussion of Herring's disabilities (ECF No. 56, at 12; ECF No. 56-4 ¶ 15). Shelby County argues that Herring has not adequately shown causation because she was fired for her misconduct and policy violations during the March 17th interaction between Herring and Lewis, not because of any disability. (ECF No. 55-2, at 10–11.)

However, as noted above, the nature of the March 17th interaction is disputed. Shelby County claims Herring was loud and aggressive, directing negative and threatening remarks at Lewis. (ECF No. 55-1 ¶¶ 6–8.) But Herring has consistently denied this characterization of the March 17th interaction. (ECF No. 56-4, at 8; ECF No. 55-6, at 4–5.) According to Herring, she did not have the energy at the time to engage in such conduct due to her disabilities, and the narrative was concocted as an excuse to fire her. (ECF No. 56-4, at 8.) With all reasonable

inferences drawn in her favor, as the Court must do at summary judgment, Herring has provided

sufficient evidence at summary judgment to place this fact in dispute.  *See Babb v. Maryville*

*Anesthesiologists P.C.*, 942 F.3d 308, 318 (6th Cir. 2019) ("[I]n deciding whether summary

judgment is appropriate, we refrain from 'weighing the evidence and determining the truth of the

matter,' and instead simply ask, 'whether the evidence presents a sufficient disagreement to

require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law.'" (quoting *Anderson*, 477 U.S. at 249)); *see also EEOC v. W. Meade Place, LLP*, 841 F.

App'x 962, 970 (6th Cir. 2021) (holding that the ADA plaintiff had sufficiently shown a disputed

issue of fact as to causation when she put forward some evidence contradicting the defendant's

proffered reason for her termination and that the court "need determine only whether there is a

sufficient dispute of fact to require that the evidence be presented to a jury—and here, there is

such a dispute.").  As such, if Herring's version of events is ultimately believed by the trier of

fact, then no misconduct or policy violations occurred, depriving Shelby County of its sole

argument against causation.

Herring has thus established a *prima facie* case of discriminatory discharge.  This

outcome is especially warranted given Herring's "not onerous requirement" of establishing her

*prima facie* case at summary judgment.  *Babb*, 942 F.3d at 320 (quoting omitted).

3.    McDonnell Douglas *Burden Shifting*

If a plaintiff establishes a *prima facie* case of discrimination, "the burden shifts to the

employer to proffer a non-discriminatory reason for discharging the employee."  *Smith v.*

*Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir. 1998) (citing *Monette v. Elec. Data Sys., Corp.*, 90

F.3d 1173, 1178, 1186 (6th Cir. 1996)).  "Should the defendant do so, the plaintiff then must

prove by a preponderance of the evidence that the stated reasons were a pretext for

discrimination." *Equal Emp. Opportunity Comm'n v. Clarksville Health Sys., G.P.*, 617 F. Supp. 3d 844, 855 (M.D. Tenn. 2022) (quoting *Redlin v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 606–07 (6th Cir. 2019)). "Plaintiff can only 'refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Keogh v. Concentra Health Servs., Inc.*, 752 F. App'x 316, 323 (6th Cir. 2018) (quoting *Grace v. USCAR*, 521 F.3d 655, 670 (6th Cir. 2008)).

Here, Shelby County has met its initial burden by identifying a legitimate reason for firing Herring—she allegedly violated Shelby County's employee policies No. 103, Employee Responsibility, and No. 702, Conduct, on March 17, 2023. *See Schwendeman v. Marietta City Sch.*, 436 F. Supp. 3d 1045, 1061 (S.D. Ohio 2020) ("Violations of express company policies are legitimate, non-discriminatory reasons for taking adverse employment action."), *aff'd*, No. 20-3251, 2020 WL 7711327 (6th Cir. Dec. 14, 2020) (citing *Holmes v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*, No. 09-10642, 2010 WL 259051, at *6 (E.D. Mich. Jan. 20, 2010); *Blackshear v. Interstate Brands Corp.*, 495 Fed. App'x 613, 618 (6th Cir. 2012)). However, as discussed above, Herring has sufficiently disputed Defendants' version of events, specifically by putting forth evidence that Shelby County's proffered reason has no basis in fact. (ECF No. 56, at 11–13; ECF No. 56-4 ¶ 13; ECF No. 55-6, at 4–5.) When drawing all reasonable inferences in favor of Herring, she has adequately shown a disputed issue of fact as to whether Shelby County's proffered reason for her termination was pretextual, and summary judgment on her discriminatory discharge claim should be denied.

B.    Failure to Accommodate

"Because 'not making reasonable accommodations' is listed in the ADA's definition of

disability discrimination, *see* 42 U.S.C. § 12112(b)(5)(A), 'claims premised upon an employer's

failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to

accommodate) of discrimination." *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 298 (6th

Cir. 2019) (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007)).

Herring bears the burden of establishing that "(1) she is disabled within the meaning of the Act;

(2) she is otherwise qualified for the position, with or without reasonable accommodation;

(3) her employer knew or had reason to know about her disability; (4) she requested an

accommodation; and (5) the employer failed to provide the necessary accommodation." *Mosby-*

*Meachem v. Memphis Light, Gas & Water Div.*, 883 F.3d 595 (6th Cir. 2018) (quoting *Johnson*

*v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011)). A plaintiff cannot

succeed on a failure-to-accommodate claim if she does not request a reasonable accommodation

before her termination. *See Melange v. City of Center Line*, 482 F. App'x 81, 86 (6th Cir. 2012)

(affirming dismissal of an ADA failure-to-accommodate claim where the plaintiff did not

identify a specific accommodation request made prior to his termination); *Turbyfill v. Tenn.*

*Dep't of Hum. Servs.*, No. 1:23-cv-88, 2024 WL 1772818, at *8 (E.D. Tenn. Apr. 24, 2024)

(dismissing the plaintiff's failure-to-accommodate claim because "no reasonable jury could find

that she requested a reasonable accommodation before her termination").

Here, Herring's failure-to-accommodate claim fails element five. It is undisputed that

Herring was first diagnosed with (and first learned about) her hypokalemia on February 18,

2025, and that she never told Defendants about her claustrophobia until March 22, 2023, at the

earliest. Even if those facts might satisfy the third element, Herring has produced no evidence

17

that she requested an accommodation based on her disabilities after those dates that Shelby County failed to accommodate. In fact, the Record reflects that Herring was not required to change offices as a result of the March 17th interaction (ECF No. 55-1 ¶ 15) and she was not prohibited from leaving work when seeking treatment for her hypokalemia (*id.* ¶¶ 23–24). Herring has provided no evidence that she asked for accommodations that were denied by Shelby County, and thus her failure-to-accommodate claim should be dismissed.

      C.    <u>Unequal Terms and Conditions</u>

Herring's claim for unequal terms and conditions, or disparate treatment, requires her to show, among other things, that Shelby County knew about her disability and that similarly-situated, non-protected employees were treated more favorably. *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 619 (6th Cir. 2020) (citation omitted). "[D]isparate treatment arises from employers 'treating some people less favorably because of their protected characteristics.'" *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 818 (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)). "That means [the plaintiff] must show that [the defendant] treated [her] differently with a discriminatory animus stemming from [the plaintiff's] disability."

Nothing in the Record indicates that Herring was treated worse than anyone else while employed by Shelby County on the basis of her disabilities. Though Herring alleges that various of Defendants had interpersonal conflicts with her and treated her differently because they presumably did not like her—including by allegedly ridiculing how she dressed, saying she "wouldn't be employed there long," and telling another employee that she was a bus driver (ECF No. 56-2, at 3, 14–15)—she has not shown (or even argued) that she was treated differently because of her disabilities. *See Gamble v. Sitel Oper. Corp.*, No. 15-2789-SHL-dkv,

2016 WL 11480179, at *8 (W.D. Tenn. July 6, 2016), *report and recommendation adopted*,

2016 WL 4435265 (W.D. Tenn. Aug. 22, 2016) (holding that the defendant's "harsh, negative,

and false statements" about the plaintiff did not constitute an adverse employment action under

the ADA because 'abusive language, . . . petty slights, minor annoyances, and simple lack of

good manners' do not constitute an adverse employment action" (quoting *Burlington N. & Santa

Fe Ry. Co. v. White*, 548 U.S. 53, 84 (2006)).

It is undisputed that Herring was first diagnosed with (and first learned about) her

hypokalemia on February 18, 2025, and that she did not tell Defendants about her claustrophobia

until March 22, 2023, at the earliest. Nearly everything that Herring complains about with

respect to disparate treatment, if not all of it, took place before February 18th and thus could not

form the basis of a disparate treatment claim. And none of Defendants' alleged disparate

treatment of Herring relates to her disabilities or reflects a discriminatory animus stemming from

her disabilities. As a result, Herring's unequal terms/disparate treatment claim should be

dismissed.

      D.    <u>Hostile Work Environment</u>

To bring a hostile-work-environment claim under the ADA, Herring must demonstrate

that:

> (1) she was disabled; (2) she was subject to unwelcome harassment; (3) the
> harassment was based on her disability; (4) the harassment unreasonably
> interfered with her work performance; and (5) the defendant either knew or
> should have known about the harassment and failed to take corrective measures.

*Trepka v. Bd. Of Educ.*, 28 F. App'x 455, 461 (6th Cir. 2022) (citation omitted). "To prevail, the

employee must show conduct that is 'sufficiently severe or pervasive to alter the conditions of

the victim's employment and to create an abusive working environment.'" *Id.* (quoting *Harris v.

Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). "[P]etty slights, annoyances, and isolated incidents

(unless extremely serious) will not rise to the level of illegality.  Rather, to be unlawful, 'the

conduct must create a work environment that would be intimidating, hostile, or offensive

to *reasonable people.*'"  *Key v. City of Detroit*, 732 F. Supp. 3d 721, 733 (E.D. Mich. 2024)

(quoting *Malloy v. DeJoy*, No. 21-cv-12094, 2023 WL 6518826, at *5 (E.D. Mich. Oct. 4, 2023))

As with her failure-to-accommodate claim, Herring has failed to show she was subjected

to pervasive harassment that altered the conditions of her employment based on her disabilities.

The minor insults and teasing she experienced are not sufficiently pervasive as a matter of law.

And though Herring certainly believes (and has provided some evidence) that she was treated

with some level of unpleasantness at work, she has not connected that antagonism with any

discriminatory animus based on her disabilities.  As a result, Herring's hostile-work-environment

claim should be dismissed.

E.    Retaliation

Herring claims that she was terminated in retaliation for opposing Lewis's request that

she move to a smaller office during the March 17th interaction and for otherwise informing

Defendants about her disabilities between February 18th and her termination on March 31st.

(ECF No. 1-1, at 2.)  Though she does not state so directly, Herring's submissions also indicate

that she claims she was retaliated against after she disagreed with Maxwell's version of events in

the report about the March 17th interaction and with Brooks's subsequent investigation.  (*See*

ECF No. 56-4 ¶ 15.)

To establish an ADA retaliation claim, Herring is required to show that "(1) the plaintiff

engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the

employer took an adverse action against plaintiff; and (4) there was a causal connection between

the protected activity and the adverse action."  *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th

Cir. 2014) (citing *A.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir.2013)). "Under

the ADA, '[p]rotected activity' includes 'opposition' to unlawful employment discrimination and

'participation' in investigations or proceedings involving unlawful discrimination." *Moody v.

MidMichigan Med. Ctr. Midland*, 704 F. Supp. 3d 772, 780 (E.D. Mich. 2023) (quoting *Skrine v.

Barrett Paving Materials*, No. 13-cv-14900, 2015 WL 5214636, at *13 (E.D. Mich. Sep. 4,

2015)). The opposition clause "protects . . . complaints to management and informal protests of

discriminatory employment practices." *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir.

2014) (citing *Trujillo v. Henniges Auto. Sealing Sys. N. Am., Inc.*, 495 Fed. App'x 651, 655 (6th

Cir. 2012)); *see also generally Prida v. Option Care Enters., Inc.*, No. 23-3936, 2025 WL

460206, at *6 (6th Cir. Feb. 11, 2025) (holding that opposing a change in work requirements

based on a protected characteristic constitutes protected opposition activity).

As an initial matter, Herring's allegations about her workplace interactions prior to

February 18, 2023, cannot form the basis of her retaliation claim because they fail the second

element. Herring was first diagnosed with (and first learned about) her hypokalemia on February

18th, and she did not tell Defendants about her claustrophobia until at least March 22nd. If

Shelby County did not know of her disabilities, it could not have retaliated against her based on

them.

Herring's contentions after that date are that she was fired in retaliation for opposing

Lewis's request that she move to a smaller office because of her disabilities[15] and for opposing

Maxwell's report about and Brook's investigation into the March 17th interaction with Lewis

that involved discussion of Herring's disabilities (*see* ECF No. 56, at 12; ECF No. 56-4 ¶ 15).

---

[15] Herring contends, for example, that the smallness of the room implicated her claustrophobia
and that the distance of the room from the bathroom implicated her hypokalemia. (ECF No. 56,
at 12; ECF No. 56-4 ¶¶ 13–16.)

Shelby County argues that Herring has not adequately shown causation because she was fired for her misconduct and policy violations during the March 17th interaction between Herring and Lewis.  (ECF No. 55-2, at 13–14.)  However, as noted above, the nature of the March 17th interaction is in dispute.  "The evidence in this case, including both temporal proximity and evidence calling into question" Shelby County's version of the March 17th interaction "is sufficient to meet Plaintiff's minimal burden to put forth evidence permitting a reasonable inference of causation."  *A.C. ex rel. J.C. v. Shelby Cnty. Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013) (quotation omitted) ("The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met.").

The remainder of the *McDonnell-Douglas* burden-shifting analysis is the same as for the discriminatory-discharge analysis above.  Though Shelby County has met its initial burden by identifying a legitimate reason for firing Herring—misconduct during the March 17th incident— Herring has put forth evidence that Shelby County's proffered reason has no basis in fact.  (ECF No. 56, at 11–13; ECF No. 56-4 ¶ 13; ECF No. 55-6, at 4–5.)  With all reasonable inferences drawn in Herring's favor, she has adequately shown a disputed issue of fact as to whether Shelby County's proffered reason for her termination was pretextual, such that summary judgment on her retaliation claim should be denied.

## III.    Defamation

"'To establish a prima facie case of defamation in Tennessee, the plaintiff must establish that: 1) a party published a statement; 2) with knowledge that the statement is false and defaming to the other; or 3) with reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement.'"  *Watson v. Golden N. Van Lines, Inc.*, No. 2:24-cv-2227-JPM-cgc, 2025 WL 1427061, at *3 (W.D. Tenn. May 16, 2025) (quoting *Sullivan v.*

*Baptist Mem'l Hosp.*, 995 S.W. 2d 569, 571 (Tenn. 1999)).  "The basis for an action for

defamation, whether it be slander or libel, is that the defamation has resulted in an injury to the

person's character and reputation."  *Quality Auto Parts Co. v. Bluff City Buick Co.*, 876 S.W.2d

818, 820 (Tenn. 1994) (citing *Little Stores v. Isenberg*, 26 Tenn. App. 357, 172 S.W.2d 13, 16

(Tenn. 1943)).

Herring has presented no admissible evidence of any false or defaming statement about

her made by any Defendant.  Neither Lewis, Mathews, nor Brooks made false or defaming

statements about Herring.  (ECF No. 55-1 ¶ 26.)  Even if the Court were to consider Herring's

unsworn and/or unsupported arguments on this point—that Defendants ridiculed how she

dressed, said she "wouldn't be employed there long," and told other employees that she was a

bus driver  (ECF No. 56-2 at 3, 14–15)—she has failed to show that their purported statements

are anything more than interpersonal disputes that do not rise to the level of defamatory

comments.  She has therefore failed to create a genuine issue of material fact, and Defendants'

Motion for Summary Judgment should be granted as to the defamation claim.  Because Herring's

only remaining claims against Brooks, Mathews, and Lewis are for defamation, they should be

dismissed as parties to this case.

## **RECOMMENDATION**

For the reasons set forth above, the Court recommends that Defendants' Motion for

Summary Judgment be granted in part and denied in part.  Herring should be permitted to

proceed to trial on her ADA claims of discriminatory discharge and retaliation against Shelby

County.  All other claims against Shelby County and all claims against all other Defendants

should be dismissed with prejudice.

Respectfully submitted this 29th day of July, 2025.

s/ Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation
disposition, a party may serve and file written objections to the proposed findings and
recommendations.  A party may respond to another party's objections within fourteen (14) days
after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within
fourteen (14) days may constitute waiver/forfeiture of objections, exceptions, and further appeal.